**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALAN DELSANTRO,<br><br>Plaintiff<br><br>v.<br><br>PENNSYLVANIA STATE POLICE, et al.<br><br>Defendants. | CIVIL ACTION NO. 3:25-CV-00711<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Presently before the Court is a motion to dismiss brought by Defendants Girard J. Dempsey ("Dempsey"), Travis Graziano ("Graziano"), Ryan Kearney ("Kearney"), Casey R. Newcomb ("Newcomb") (collectively, "the individual defendants"), and the Pennsylvania State Police ("PSP" together with the individual defendants, "Defendants"). (Doc. 16). This action was originally filed by Plaintiff Alan Delsantro ("Delsantro") on April 22, 2025. (Doc. 1). Delsantro filed the operative amended complaint on January 9, 2026. (Doc. 12). For the following reasons, Defendants' motion to dismiss is denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from Delsantro's amended complaint and accepted as true for purposes of this motion. (Doc. 12). On May 3, 2023, the individual defendants, working as state troopers under the employment of PSP, conducted surveillance on a suspect. (Doc. 12, ¶ 16). Graziano and Newcomb executed a controlled drug/sale buy with the suspect while Dempsey and Kearney observed and prepared to arrest him. (Doc. 12, ¶ 17). The individual defendants knew the suspect from a prior drug investigation, knew what specific

vehicle the the suspect drove, and knew the suspect's license plate number.[1] (Doc. 12, ¶¶ 18-19). The individual defendants facilitated a controlled drug transaction wherein the suspect would enter a residence, which they observed. (Doc. 12, ¶¶ 21, 23). After the suspect completed the transaction, the individual defendants did not arrest him at the scene, enabling him to enter his vehicle and drive away. (Doc. 12, ¶¶ 25-27). Dempsey and Kearney, who occupied the passenger seat of the vehicle Dempsey drove, engaged in a pursuit of the suspect's vehicle until the suspect managed to evade the troopers.[2] (Doc. 12, ¶ 29).

Dempsey and Kearney found the suspect's vehicle and engaged in another high-speed pursuit. (Doc. 12, ¶ 31). Like the first attempt of pursuit, Dempsey and Kearney communicated the suspect's location to other law enforcement in the area, including Graziano and Newcomb. (Doc. 12, ¶ 32). In another attempt to evade law enforcement, the suspect drove at high rates of speed and, for some moments, into oncoming traffic. (Doc. 12, ¶ 33). Defendants witnessed and knew of the suspect's unlawful driving during this incident. (Doc. 12, ¶ 33). None of the Defendants instructed Dempsey to stop the pursuit, despite its reckless nature and its failure to comply with PSP policies and procedures. (Doc. 12, ¶¶ 37, 39). Defendants admit to traveling at rates of more than 70 miles per hour at night in inclement weather throughout several neighborhoods of Scranton. (Doc. 12, ¶ 41, 43-44). Defendants encouraged the suspect to drive dangerously and recklessly through residential areas. (Doc. 12, ¶ 45).

---

[1] Delsantro alleges that the individual defendants, at least, could have ascertained the suspect's telephone number. (Doc. 12, ¶ 20).

[2] Delsantro does not allege that Graziano and Newcomb engaged in the pursuit of the suspect by operating a motor vehicle or while sitting in a motor vehicle in operation. (Doc. 12, ¶¶ 11-14).

At approximately 9:30 on the night of the alleged incident, the suspect failed to stop at a STOP sign and sped into the intersection of Saint Ann Street and Parrott Avenue. (Doc. 12, ¶ 49). the suspect "violently collided" with Delsantro's vehicle on the driver side. (Doc. 12, ¶¶ 49, 51). The collision caused Delsantro's vehicle to roll into the woods adjacent to Parrot Avenue, trapping Delsantro inside his vehicle. (Doc. 12, ¶ 51). Despite the crash, Defendants continued to chase the suspect. (Doc. 12, ¶ 53). As a result of the collision, Delsantro suffers from serious and permanent injuries, causing physical and mental pain and inconvenience. (Doc. 12, ¶¶ 54-55). Delsantro alleges that he incurred numerous expenses for treating his injuries and suffers a decrease in earning capacity. (Doc. 12, ¶¶ 56-57). Delsantro further alleges that the individual defendants unlawfully deprived him of constitutional rights. (Doc. 12, ¶ 70).

Delsantro filed the original complaint on April 22, 2025. (Doc. 1). The Court dismissed the original complaint on November 13, 2025. (Doc. 10). Delsantro filed an amended complaint on January 9, 2026. (Doc. 12). Defendants field the instant motion to dismiss on January 23, 2026, and a brief in support of the motion on February 6, 2026 (Doc. 16; Doc. 17). On February 18, 2026, Delsantro filed a brief in opposition. (Doc. 18). Defendants did not file a reply brief. Accordingly, the motion is ripe for discussion.

## II. Legal Standard

### A. Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions

that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also* *Sheridan v. NGK Metals*

*Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

B. 42 U.S.C. SECTION 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting

*West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III. DISCUSSION

Defendants argue that Delsantro fails to state a claim under the Fourteenth Amendment because the amended complaint lacks a state created danger claim. (Doc. 17, at 4). Delsantro counters and argues that Defendants does not apply the appropriate standard when analyzing the high-speed pursuit this case involves. (Doc. 18, at 8).

To prevail on a § 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). A plaintiff must show a defendant's "personal involvement" by adequately alleging either (1) the defendant's personal involvement in the wrongful conduct; or (2) the defendant's actual knowledge and acquiescence in the wrongful conduct. *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall… deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Although the text refers only to the "process" through which a person is deprived of a constitutional liberty or property interest, the Supreme Court has declared that the provision "guarantees more than fair process." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997). In effect, "the Fourteenth Amendment substantively prohibits a State from 'abusing governmental power' or 'employing it as an instrument of oppression.'" *Douglas v. Brookville Area Sch. Dist.*, 836 F. Supp. 2d 329, 350 (W.D. Pa. 2011) (emphasis in original) (quoting *Davidson v. Cannon*, 474 U.S. 344, 348 (1986)).

The state-created danger theory of liability "embodies the principle that the

government has an obligation under the Fourteenth Amendment's Due Process Clause 'to protect individuals against dangers that the government itself creates.'" *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 717 (3d Cir. 2018) (quoting *Haberle v. Troxell*, 885 F.3d 170, 176 (3d Cir. 2018)). The Third Circuit established that police officers' conduct in a high-speed pursuit will be subject to its state-created danger case law. *See Sauers*, 905 F.3d at 723. To establish a state-created danger claim, a plaintiff must plead four elements:

> (1) [t]he harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted all.
>
> *Sauers*, 905 F.3d at 717.

Regarding the second element, the level of culpability required to shock the conscience depends on the facts of each case. *See Sauers*, 905 F.3d at 717 (citation omitted). Courts classify situations into three categories according to the amount of time a police officer has to make a decision to assess whether their behavior rises to a level that "shocks the conscience." *Sauers*, 905 F.3d at 717 (citing *Haberle*, 885 F.3d at 177). First, a "hyperpressurized environment" involve split-second decisions that often do not shock the conscience unless "an intent to cause harm" exists. *Haberle*, 885 F.3d at 177 (citation omitted). Second, decisions that are executed "in a matter of hours or minutes" occur under "hurried deliberation." *Haberle*, 885 F.3d at 177 (citations omitted). Those decisions shock the conscience when such actions "reveal a conscious disregard of 'a great risk of serious harm rather than a substantial risk.'" *Haberle*, 885 F.3d at 177 (citation omitted). Finally, decisions made after time for "unhurried

judgments" and careful deliberation may shock the conscience if done with deliberate indifference. *Haberle*, 885 F.3d at 177 (citation omitted). Deliberate indifference is the conscious disregard of a "substantial risk of serious harm," or "a willingness to ignore a foreseeable danger or risk." *Kedra v. Schroeter*, 876 F.3d 424, 437 (3d Cir. 2017) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 910 (3d Cir. 1997)). "[W]here state actors have 'the luxury of proceeding in a deliberate fashion… deliberate indifference may be sufficient to shock the conscience.'" *Customers Bank v. Municipality of Norristown*, 942 F. Supp. 2d 534, 541 (E.D. Pa. 2013) (quoting *Estate of Smith v. Marasco*, 430 F.3d 140, 153 (3d Cir. 2005).

Given the facts alleged in the complaint, the Court rejects Defendants' argument that the "hyperpressurized environment" standard should be applied. (Doc. 17, at 5). Defendants argue that, according to binding authority, high-speed police chases occur a in "hyperpressurized environment" and shock the conscience only when an intent to cause harm is present.[3] (Doc. 17, at 5). The Court cannot overlook what the Third Circuit established:

> Our holding today does nothing to alter the longstanding principle that, in [high-speed police chases], constitutional liability cannot exist absent an intent to harm. But when there is no compelling justification for an officer to engage in a high-speed pursuit and an officer has time to consider whether to engage in such inherently risky behavior, constitutional liability can arise when the officer proceeds to operate his vehicle in a manner that demonstrates a conscious disregard of a great risk of serious harm.
>
> *Sauers*, 905 F.3d at 723.

This case is not necessarily "markedly similar" to any case involving a bystander's serious injury caused by a high-speed police chase. (Doc. 17, at 5). The Court cannot find a compelling justification for the individual defendants' conduct in the chase of the suspect. *See*

---

[3] Defendants rely on a case decided in the summary judgment posture, a stage in which this litigation has not reached. (Doc. 17, at 5-9) (citing *Donahue v. Borough of Collingdale*, 714 F. Supp. 3d 504, 510 (E.D. Pa. 2024)).

*Sauers*, 905 F.3d at 723 (recognizing that "most high-speed police pursuits arise when officers are responding to emergencies or when they must make split-second decisions to pursue fleeing suspects"). The amended complaint contains allegations for the Court to infer that the individual defendants had a significant more amount of time and information than another police officer making a split-second decision. Not only did the individual defendants have time to re-deliberate after the first pursuit of the suspect, but they also knew the suspect from a prior investigation, the suspect's vehicle and license plate number, and could at least ascertain the suspect's phone number. (Doc. 12, ¶¶ 18-19, 30-31).

The Court agrees with Delsantro that the individual defendants exemplified "[a]ctual deliberation." (Doc. 18, at 9-10). Throughout the individual defendants' pursuit, no factor fostered a "hyperpressurized environment." Here, drawing all inferences in favor of the allegations in the amended complaint, the individual defendants should have made decisions in a manner of "hurried deliberation" rather than acting in a "hyperpressurized environment." The individual defendants had at least some time to deliberate when facilitating the controlled buy transaction and when they lost the suspect after the first pursuit. If the individual defendants knew they would let the suspect drive away after entering his vehicle, they should have facilitated other troopers to contain his fleeing in the neighborhood. Between the two pursuits, they also should have provided the suspect's physical appearance, model of his vehicle, and license plate number to other law enforcement members. With the amount of time and information they already had, the individual defendants did not have to make a split-second decision. *Sauers*, 905 F.3d at 718 (affirming a district court's decision that plaintiff pled a state-created danger claim and acknowledging that law enforcement personnel are expected "to engage in such pursuits only when 'reasonable justification' exists"). Accordingly, the

Court denies Defendants' motion to dismiss.[4] (Doc. 16).

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **DENIED.** (Doc. 10). An appropriate order follows.

**BY THE COURT:**

**Dated: August 28, 2026**

s/ Karoline Mehalchick

**KAROLINE MEHALCHICK**
**United States District Judge**

[4] The Court retains supplemental jurisdiction over Delsantro's remaining state law claims. (Doc. 12, ¶¶ 106-215).